UNITED STATES of America and Robert C. Jesson, Special Agent, Internal Revenue Service, Petitioners,

v.

Forrest KIMBALL, Assistant Treasurer, First Vermont Bank & Trust Company and First Vermont Bank & Trust Company and Charles and Theresa Rosploch, Intervenors.

UNITED STATES of America and Robert C. Jesson, Special Agent, Internal Revenue Service, Petitioners,

v.

Richard F. ROUSSEAU, Assistant Cashier, Vermont National Bank and Vermont National Bank and Charles and Theresa Rosploch, Intervenors.

Civ. A. Nos. 78–42, 78–43.

United States District Court, D. Vermont.

April 26, 1978.

706. See *Haneke v. Secretary of Health, Education & Welfare, supra,* 535 F.2d at 1296–1297, n. 16.

Daniel J. Dinan, Tax Division, Dept. of Justice, Washington, D.C., for petitioners.

Potter Stewart, Jr., Kristensen, Cummings & Price, Brattleboro, Vt., for Kimball and First Vermont Bank & Trust.

Stephen A. Dardeck, Rutland, Vt., C. Russell Shillaber, Cooper, Hall & Walker, Rochester, N.H., for intervenors Charles and Theresa Rosploch.

HOLDEN, Chief Judge.

## MEMORANDUM OF DECISION

These consolidated cases concern the restless question of enforcement of two summonses issued by Robert C. Jesson, Special Agent, Internal Revenue Service, to two Vermont banks at Brattleboro, Vermont. The petitioner Jesson is assigned to the Intelligence Division of the Internal Revenue Service under the District Director of Internal Revenue for New Hampshire. The Internal Revenue Service has undertaken a pending investigation of the federal tax liabilities of Charles and Theresa Rosploch of Hinsdale, New Hampshire. The respondent banks perform financial services for the intervening taxpayers and Rosploch Service Station, a company in which the Rosplochs have a financial interest.

In the course of the investigation the petitioner was instructed by his superior to issue and serve the summonses to the respondent banks to appear at their respective banking houses at specified times on August 29, 1977 and to produce for examination various records of the activities of the taxpayers' bank accounts for the years 1971 through 1974, as provided in Sections 7602 and 7603 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 7602–7603). The First Vermont Bank and Trust Company and the Vermont National Bank and their respective officers failed to appear at the time and place appointed in the summonses. The present proceedings were instituted pursuant to 26 U.S.C. § 7604.

As is their right under Section 1205(a) of Pub.L. 94–455, 26 U.S.C. § 7609(b), the Rosplochs, as the taxpayers identified in the summonses, intervened to deny some of the allegations of the petition. More particularly, they challenge enforcement of the summonses for the following reasons: (1) the Internal Revenue Service has recommended criminal prosecution of Theresa Rosploch for the years 1971–1973; (2) the action is brought in bad faith for the purpose of obtaining evidence of violations of the criminal statutes; and (3) the Internal Revenue Service has determined the federal tax liabilities of the intervenors for the years 1971, 1972 and 1973 on unreported income and the production called for in the summonses is not necessary.

In response to an order to show cause, the court received testimony from the petition-

er Robert Jesson and Norman LaRose, another special agent assigned to the intelligence division in New Hampshire. On the evidence presented, the court finds that Special Agent LaRose conducted a joint investigation with the audit division of the Internal Revenue Service concerning the tax liabilities of Charles and Theresa Rosploch for the years 1971–1974. As a result of the investigation, Special Agent LaRose testified he has recommended to the Regional Counsel, Internal Revenue Service, that criminal prosecution of Theresa Rosploch should be considered. Although the audit division of Internal Revenue Service has not actively participated in the ongoing investigation for a period of some eleven months, the activities of that division have not terminated. The audit by this division formed the basis for participation in the investigation by the intelligence division. The audit division's present interest centers on the amount of unreported income for the years in question and the presence of fraud,

for the reason that these issues govern the applicable statute of limitations for assessment and collection of the civil tax liabilities.[1]

The Regional Counsel has not recommended criminal prosecution to the Department of Justice, although it appears that the taxpayers have been advised that such a consequence is under active consideration. According to the testimony presented to the court, the Regional Counsel believes there may be errors in the audit which could adversely affect the interests of either the Government or the taxpayers, particularly if these errors bear on the limitation of proceedings to enforce civil liability. However that may be, the records requested by the Internal Revenue Service are relevant and important to the determination of the intervenors' tax liability. They have equal bearing on the decision to be made by the Internal Revenue Service whether to withhold or recommend criminal action by the

---

1. 26 U.S.C. § 6501, entitled "Limitations on assessment and collection," sets out specific exceptions to the general rule that the IRS has three years from the date on which a return was filed to assess a tax or proceed in a court to collect a tax without an assessment.

Section 6501(c)(1) provides that there is no operable statute of limitations if a fraudulent return was filed with an intent to evade the payment of taxes:

(c) Exceptions.—

(1) False return—In the case of a false or fraudulent return with the intent to evade taxes, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

If the IRS and the taxpayer agree in writing to an extension of the period of limitation, section 6501(c)(4) provides that the tax may be assessed at any time within the extended period, regardless of the factual context:

(c) Exceptions.—

(4) Extension by agreement—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Another subsection of section 6501 allows the time period to be extended from three to six years if a taxpayer has omitted from his gross income includible income in an amount over 25 per cent of the amount of gross income stated in the return:

(e) Substantial omission of items—Except as otherwise provided in subsection (c)—

(1) Income taxes—In the case of any tax imposed by subtitle A—

(A) General rule—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For the purposes of this subparagraph—

(i) In the case of trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

Department of Justice. The summonses were not issued from motives of harassment, nor were they directed toward an effort to achieve a settlement of controverted tax claims.

■ The evidence presented to the court by the Internal Revenue Service, by way of affidavits and oral testimony, is not rebutted by the intervenors. The proof is persuasive that the summonses were issued in aid of an investigation that has not been concluded. The nature of the investigation is both civil and criminal. Depending on the result of the completed investigation, it may produce consequences that affect the taxpayers' liability. The final outcome, of course, is unknown at this stage of the investigative process. It is known that the special agent in the field has recommended to his superior that criminal prosecution go forward as to Theresa Rosploch. The intervenors contend that the summonses were not issued in good faith and designed solely for the purpose of furthering the interests of the Internal Revenue Service in the criminal prosecution of the taxpayers.

That the summonses served on the respondent banks may provide facts to determine civil liability and at the same time uncover criminal conduct is appropriate to the statutory scheme upon which they were issued. The validity of the process is not impaired by the fact that it originated from the participation by Special Agent LaRose in the joint investigation. *Donaldson v. United States,* 400 U.S. 517, 535, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). However, the concluding paragraph of the court's opinion states:

> We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

*Id.* at 536, 91 S.Ct. at 545.

■ The holding in *Donaldson* leaves unanswered the full meaning of "recommendation for criminal prosecution." Perhaps

as Judge Friendly hopefully suggested in *United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36 at 39 (2d Cir. 1978), enlightenment will be forthcoming in *United States v. LaSalle National Bank,* 554 F.2d 302 (7th Cir. 1977) *cert. granted* Dec. 13, 1977, argued Mar. 29, 1978), 434 U.S. 996, 98 S.Ct. 632, 54 L.Ed.2d 489. Criminal prosecution of the intervenors has not been recommended by the Internal Revenue Service to the Department of Justice. The question here is whether the recommendation by the special agent in the field to the Regional Counsel brings the summonses within the reach of the proscription of the holding in *Donaldson.* Although the question has not been decided in this circuit, the opinion in *United States v. Morgan Guaranty, supra,* as it relates to the interest of the special agent and the Internal Revenue Service, is instructive.

> While under IRS procedures (Special Agent) Drombowski's own interest was in determining whether he should recommend a prosecution, neither the making of such a recommendation nor the failure to make one would lessen the IRS' appropriate interest in determining whether the taxpayers were liable for deficiencies and penalties.

*Id.* at 42.

Here, as in *Morgan Guaranty,* the Internal Revenue Service has a need to reexamine the results of the joint audit previously conducted. Such a need affords no evidentiary support for the contention that the summonses were issued solely for the purposes of possible criminal prosecution. *Id.*

The force and effect of the recommendation of an agent in the field, through the chain of command in the Internal Revenue Service, was considered in *United States v. Billingsley,* 469 F.2d 1208 (10th Cir. 1972) (Lewis, C. J.). The taxpayer attributed significance to the recommendation of a special agent to his superiors, equating his assessment to the recommendation referred to in *Donaldson.*[2] In rejecting the argument, the court held:

> (T)he appellee contends that the only "recommendation" under Internal Revenue Ser-

---

2. In *United States v. Billingsley,* 469 F.2d at 1210, the court referred to this point:

[T]he "recommendation" referred to in *Donaldson* occurs, at the earliest, when the Internal Revenue Service forwards a case to the Department of Justice for criminal prosecution. To attribute any other meaning to the word "recommendation" would be inconsistent with the Court's reasoning.

*Id.,* 469 F.2d at 1210.

The court agrees with the holding in *Billingsley,* that it is the ultimate recommendation by the Internal Revenue Service in referral to the Department of Justice, rather than the special agent's views expressed to his superiors that ripens the case into a criminal prosecution within the precept of *Donaldson.* Since the Rosploch investigation has not reached that stage, the summonses issued by the petitioners, under 42 U.S.C. § 7602, to the First Vermont Bank and Trust Company and the Vermont National Bank will be enforced. Appropriate orders to accomplish this result shall be entered.

vice procedures to which the *Donaldson* opinion could refer is that of the special agent. To accept this argument as determinative of the issue would be to glorify form and ignore substance. Whether the actions of a special agent's superiors are denominated as reviewing, approving, disapproving or referring is irrelevant. There is effectively a recommendation at each level upward in the Service's chain of command regardless of the labels attached. The ultimate recommendation by the Service is referral to the Department of Justice. Consequently, a special agent's recommendation cannot be placed in a vacuum, isolated from the Service's entire system of review and treated as the only recommendation for criminal prosecution.